THE KING *vs.* JOHN BROWN.

IN A trial for ARSON, EVIDENCE of THREATS by prisoner, is admissible.

It is no objection to a witness' competency that he has been committed for the same offence, but the prisoner is entitled to the EVIDENCE OF THE RECORD taken of his own testimony before the magistrate who committed the witness.

Mr. Justice HARTWELL delivered the opinion of the Court as follows :

Defendant was convicted at last April Term of this Court, on a charge of maliciously burning the American ship *King Phillip*, in the harbor of Honolulu, on the 18th of March, current. The Bill of Exceptions sets forth :

1. That at the trial of said cause, the prosecution, in order to show a motive for committing the offense charged, were allowed to introduce evidence of certain threats, which defendant made against the second mate of his vessel, two or three days before the fire.

2. That after the Police Justice had testified that one Bayles, the principal witness against the defendant, had been tried before him, and committed for the identical offense charged against defendant, principally on defendant's testimony, the evidence of what defendant had testified against said Bayles, in his trial for commitment, was not admitted, either as part of the *res gestæ*, or in order to effect the credibility of the witness Bayles, by showing the relation existing

between him and defendant, and the motives which influenced him to testify in the present case.

3. That the verdict was contrary to law and evidence, unwarranted by the evidence, and contrary to the instructions of the Court.

Exception was also taken upon the sufficiency of Bayles' evidence, unless corroborated by other evidence, to support the charge. The evidence of recent threats, by the defendant, against one of the officers of his vessel, was properly admitted, tending to show that the defendant was disaffected; that he had a motive for desiring an immediate end of his voyage; and that he was intending to resort to violent modes. True, this is no uncommon occurrence, and may have existed with each member of the ship's company, and such evidence should not weigh much, but it certainly tends to repel the suggestion of accident or negligence. [Cook *vs.* Moore, 11 Cush., 217; Bottomley *vs.* U. S., 1 Story, 143.] There can be no doubt that Bayles was a competent witness; our statutes make no provision for the disqualification of witnesses, except to make the real plaintiff or defendant in interest, incompetent. [Civil Code, Section 1218.] It was argued, but we think without strict legal propriety, that Bayles was to be regarded as an accomplice; but we know of no rule of law requiring the evidence of an accomplice to be corroborated. It is highly proper to instruct the jury of the untrustworthy nature of such evidence, and to caution them that it is unsafe to base a verdict of conviction solely thereon, and that corroborating evidence of some point, essential to the issue, should be given. Such instruction was given, substantially, and in strong terms; and even if it were not, it after all rests in the discretion of the Court, as a matter of practice, and a conviction, upon the unsupported evidence of an accomplice, can not be set aside on that ground. [Commonwealth *vs.* Bosworth, 22 Pick., 399; Commonwealth *vs.* Brooks, 9 Gray, 299; Regina *vs.* Boyes, 1 El. B. & S., 311.] It was

properly left to the jury, whether Bayles' evidence was sufficiently corroborated.

The case presents no instance in which the jury departed from the instruction of the Court, and it must be presumed that they did their duty. There is no occasion to distrust the verdict, for insufficiency of evidence. The motive, opportunity, facilities at hand, expressed intention, the failure to give the alarm, when the fire would naturally have been observed by the defendant, upon his watch, are in evidence. The Court having decided what evidence can legally go to the jury, the responsibility of inferring guilt or innocence therefrom must, in this case, remain with them. There is always doubt of the degree, and of the fact of guilt. But the doubt which must decide in the prisoner's favor, is no fanciful or possible contingency. The evidence does not so point to accident or to other agency as the cause of the fire, as to authorize us to say that the jury disregarded such doubt as would, probably, influence reasonable men.

Concerning the admissibility of the Police Magistrate's evidence, as sought, there is more difficulty. The well-established rules of law forbid a party from testifying in his own behalf, while no person, whether party or witness, can ever be compelled to give evidence to criminate himself, on the maxim, *Nemo teneter prodere seipsum.* The principle is as old as the civil and common law, that the evidence of a party, in his own favor, is so liable to be influenced by personal interest that it can not safely be relied upon, and left to the jury. Many of the United States have passed statutes admitting this class of evidence, subject to cross-examination. No such statute, however, exists here. It was strongly urged that defendant's evidence in a previous case, was inadmissible for any purpose, and particularly so, because given at an *ex-parte,* preliminary hearing, with no cross-examination, and when not confronted by opposing testimony.

It was in evidence that Bayles was committed on the strength of defendant's testimony, and the jury were fully

instructed as to the extremely suspicious nature of his subsequent testimony. It is probable that the result of allowing the Police Magistrate to testify, as he did, that the defendant's evidence had great weight with him in ordering Bayles' commitment, was equally favorable to the prisoner, with a statement of that evidence, *totidem verbis.* It can not, however, be denied, that at the time, when the defendant gave the rejected evidence, he was under no legal disability. He testified under an entirely different state of things, and *diverso intuitu.* The familiar cases of evidence of statements by husband or wife, previous to marriage, being admitted for or against each other, or of insane persons' declarations, made in lucid moments, are in point. The relations between the parties were sufficiently shown by the evidence admitted; of course, we can not know what the rejected evidence would be, but it might present a state of facts materially affecting Bayles' credibility. A long, minute, and detailed account of the affair, given by Brown, particularizing facts, events, and conversations, followed in this case by a statement from Bayles, precisely tallying with, and fitting into, each detail, might give rise to grave suspicions of its truth. We are, upon the whole, of opinion that this evidence can be admitted, to affect Bayles' credibility, without violating the rule of law preventing a party to the record from testifying. As the defendant was legally entitled to this evidence, and as its effects upon the jury can not be surmised by us, we decide that, in conformity with our established practice, as well as the legal authorities of the country to which these parties belong, a new trial should be granted. New trial ordered.

W. C. Jones, Esq., for the motion.

The Attorney General, adverse.

———

The new trial ordered above was held, and resulted in the acquittal of the accused by the jury.